1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

MITCHELL SHOOK,

10

       Plaintiff, Pro Se,

11

vs.

12

CITY OF TACOMA, MOUNTAIN RAIL
DIVISION,

13

14

       Defendant.

15

16

NO.  3:19-CV-05794-BHS

DEFENDANT'S OPPOSITION
TO MOTION FOR
TEMPORARY RESTRAINING
ORDER

17

       COMES NOW Defendant City of Tacoma, appearing by and through William

18

C. Fosbre, Tacoma City Attorney, and M. Joseph Sloan, Deputy City Attorney, and

19

herein Opposes Plaintiff's Motion for Temporary Restraining Order.

20

**STATEMENT OF FACTS**

21

       The City of Tacoma acquired the Tacoma Rail Mountain Division ("Mountain

22

Division") through two transactions with the Weyerhaeuser Company.  The first 54.5

23

miles was received by donation in 1990.[1]  The remaining 77 miles, which included a

24

25

---

[1] See, Declaration of Alan Matheson ("Matheson Decl."), Dkt. 13-1, P. 2, ¶ 8.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 1
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

1    locomotive servicing facility at Western Junction (Thurston County), was purchased

2    in 1995 for $3,159,457.[2]

3    　　　　The Mountain Division, though operated by Tacoma Rail under an operating

4    agreement with the City, is owned by the City of Tacoma Department of Public

5    Works, and is not part of Tacoma Public Utilities.[3] The City of Tacoma Department of

6    Public Works is funded by tax revenue.  In further contrast, the Mountain Division

7    was obtained and maintained for the purpose of enhancing tourism along the

8    corridor, unlike the Belt Line Division of Tacoma Rail that delivers and retrieves

9    customer's railcars, and engages in switching operations at the Port of Tacoma.[4]

10   　　　　In 2012, the Washington State Auditor found that $6.25 million of inter-fund

11   loans made from the General Fund to the Mountain Division to cover operating

12   losses from the freight business between 1998 and 2007 were an unwise use of City

13   funds and unlikely to be repaid by revenue generated by the Mountain Division.

14   Accordingly, City needed to pursue a combination of two segment divestments of the

15   Mountain Division to WRL, LLC, d/b/a Rainier Rail ("WRL"), a Class III rail carrier, in

16   order to repay the inter-fund loans.[5]

17   　　　　　　　**THE STATUS OF THE FIRST SALE TRANSACTION**

18   　　　　The first divestment was made to WRL of a 34.6 mile *segment* of the

19   Mountain Division located in Lewis and Thurston Counties.[6]  The divestment, which

20

21

22

23   [2] *Id.*

     [3] Alan Matheson Declaration, also see Chapter IV, Section 4.10 of the Tacoma City Charter.

24   [4] *Id.*

     [5] *Id.*

25   [6]  *See* Matheson Decl., p. 4, ¶ 16 and Exhibit B attached thereto.

     DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
     RESTRAINING ORDER- 2
     No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

was authorized by the Surface Transportation Board ("STB") on October 14, 2016, has long since been consummated.[7]

## THE STATUS OF THE SECOND SALE TRANSACTION

The second divestment of a 4.4 mile segment of the Mountain Division was made to WRL and approved by the City Council on August 6, 2019.[8]  The purchase and sale agreement for this segment is dated June 4, 2019, and was executed by WRL on May 24, 2019, and by the Tacoma City Manager on June 4, 2019.[9]  The 4.4 segment is located in Pierce County and in Thurston County. The deed for the Pierce County, Washington parcel was executed by the Mayor of the City of Tacoma on August 8, 2019, accepted by WRL on August 9, 2019, and recorded in the Office of the Pierce County Auditor on September 9, 2019.[10]  The deed for the Thurston County, Washington parcel was executed by the Mayor of the City of Tacoma on August 8, 2019, accepted by WRL on August 9, 2019, and recorded in the Office of the Thurston County Treasurer on September 23, 2019.[11]

The Surface Transportation Board ("STB") published WRL's notice of exemption to acquire this segment on September 20, 2019; the exemption becomes effective on October 5, 2019.[12]

The City has received payment of the purchase price of $100,000 and the only remaining event required to close this transaction is for the STB's exemption authority to become effective on October 5, 2019.  There are no further actions

---

[7] *Id*. Matheson Decl. Exhibit C.
[8] *See* Declaration of M. Joseph Sloan ("Sloan Decl."), Dkt. 13-2, Exhibit B attached thereto (City Council Resolution No. 40394).
[9] *See* Declaration of Gregory Muller ("Muller Decl."), Dkt. 13-3, Exhibit A attached thereto (Purchase and Sale Agreement).
[10] *See* Muller Decl., Ex. C (Quitclaim Deed No. 6771).
[11] *See* Muller Decl., Ex. B (Quitclaim Deed No. 6770).
[12] *See* Matheson Decl., Ex. C (STB Docket No. FD 36341).

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 3
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

required by the City to close this transaction and therefore no action for this Court to enjoin.

**STANDARD**

The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). "Federal Rule of Civil Procedure 65 governs the issuance of TROs and preliminary injunctions, and courts apply the same standard to both." *Weaver v. City of Montebello*, 370 F. Supp. 3d 1130, 1134 (C.D. Cal. 2019) (*citing Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citations omitted).) "Plaintiffs seeking injunctive relief must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).) Preliminary injunctions and temporary restraining orders are "extraordinary and drastic" remedies. *Munaf v. Geren,* 553 U.S. 674 (2008). As such, the Court may grant them only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 4
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

# ARGUMENT

Plaintiff's Motion establishes none of the four factors necessary for a Temporary Restraining Order. Plaintiff is unlikely to prevail on the merits because the state statute on which his suit relies both does not apply to this case and, even if it did, it would be preempted by federal law. As Defendant's Response filed on September 25, 2019, explained, Plaintiff does not, and cannot, describe any irreparable harm he will suffer absent extraordinary relief. The balance of the equities favor the City of Tacoma. Finally, granting Plaintiff's motion is decidedly against the public interest, as determined both by the City of Tacoma and the United States Surface Transportation Board. This Court should deny Plaintiff's Motion for Temporary Restraining Order.

## I.  PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS BECAUSE THE STATE STATUTE DOES NOT APPLY TO THIS CASE.  IF IT DID APPLY, IT WOULD BE PREEMPTED BY FEDERAL LAW.

As a preliminary matter, Plaintiff's Motion misidentifies the claim on which he must show a likelihood of success for the Court to grant a Temporary Restraining Order. The relevant inquiry is whether he is likely to succeed on the merits of the claims in his Complaint: namely, that RCW 35.94 applies to two rail line transactions that were authorized by the Surface Transportation Board and are subject to that federal agency's exclusive jurisdiction under the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10501(b) ("ICCTA"). Plaintiff focuses instead on the likelihood of success of his motion to remand this action to state court. Even if Plaintiff were to be successful on the motion to remand, the state court would still be required to honor the preemptive effect of federal law.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER- 5
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

Accordingly, in this response, the City will address the merits of Plaintiff's mistaken claim that state law should interfere with federally regulated transactions in direct contravention of the STB's plenary jurisdiction over rail line acquisitions. That claim is unlikely to succeed on the merits for three reasons. First, Plaintiff's state law claim is preempted by ICCTA. Second, even if the claim is not preempted, it fails as a matter of law because the specific part of RCW 35.94 that Plaintiff cites does not apply to either of the rail line transactions at issue in this case. Third, City did, as a matter of best practices, follow other public involvement provisions in RCW 35.94 in selling the railroad lines.

### A. If RCW 35.94 Applies to Railroads, it is Preempted by the Comprehensive System of Federal Rail Regulation.

The crux of Plaintiff's Complaint is that an interstate railroad is a "utility" under RCW 35.94 and the City must obtain authorization from the state — through a vote of a subset of state residents — in order to sell a railroad line to another interstate railroad. In other words, Plaintiff contends that the determination of whether the transaction is in the public interest is subject to local vote. However, under ICCTA, Congress vested the STB with "exclusive" jurisdiction over such transactions, 49 U.S.C. § 10501(b), and tasked the STB with the public interest determination, 49 U.S.C. § 10902(c). This exclusive authority over interstate commerce completely preempts Plaintiff's attempt to deploy state law against the interstate rail network.

The preemption doctrine is based on the Supremacy Clause of the United States Constitution and provides that state laws that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). Congress's

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

authority under the Commerce Clause of the U.S. Constitution to regulate the railroads is well established, *see, e.g., Pittsburgh & Lake Erie R.R. v. Ry. Labor Executives Ass'n,* 491 U.S. 490, 510 (1989), and the Supreme Court repeatedly has recognized the preclusive effect of federal legislation in this area. *See, e.g., Colorado v. United States,* 271 U.S. 153, 165–66 (1926) (ICC abandonment authority is plenary and exclusive); *Transit Comm'n v. United States,* 289 U.S. 121, 127–28 (1933) (ICC authority over interstate rail construction is exclusive); *City of Chicago v. Atchison, T. & S.F. Ry.,* 357 U.S. 77, 88–89 (1958) (local authorities have no power to regulate interstate rail passengers). The Interstate Commerce Act (and its successor, ICCTA) have been recognized as "among the most pervasive and comprehensive of federal regulatory schemes." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318 (1981). "[There] can be no divided authority over interstate commerce, and . . . the acts of Congress on that subject are supreme and exclusive." [Citation omitted.] Consequently, state efforts to regulate commerce must fall when they conflict with or interfere with federal authority over the same activity." *Id.* at 319-20.

Congress asserted exclusive federal authority in ICCTA to protect interstate commerce from a patchwork of state and local regulations. As the Senate noted when it approved ICCTA:

> The hundreds of rail carriers that comprise the railroad industry rely on a nationally uniform system of economic regulation. Subjecting rail carriers to regulatory requirements that vary among the States would greatly undermine the industry's ability to provide the 'seamless' service that is essential to its shippers and would weaken the industry's efficiency and competitive viability.

S. REP. 104-176, 6 (1995). The House similarly noted when it approved ICCTA:

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 7
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

> Although States retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive. Any other construction would undermine the uniformity of Federal standards and risk the balkanization and subversion of the Federal scheme of minimal regulation for this intrinsically interstate form of transportation.

H.R. REP. 104-311, 96 (1995).

To this end, ICCTA expressly preempts any state attempts at railroad regulation in the clearest possible terms: "the remedies provided under this part with respect to regulation of rail transportation are *exclusive* and *preempt* the remedies provided under Federal or State law." *Id.*  The purpose of Congress is "ultimate touchstone" of preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996).  Here, the "congressional intent to preempt state and local regulation of rail lines is explicit in both the plain language of the ICCTA and the statutory framework surrounding it." *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1031 (9th Cir. 1998), *as amended* (Oct. 20, 1998).

More specifically, ICCTA vests "exclusive" jurisdiction over rail transportation decisions with the STB.  49 U.S.C. § 10501(b). STB possess exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules, (including car service, interchange, and other operating rules), practices routes, services, and facilities of such carriers; and

> (2) the construction, **acquisition**, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

*Id.* § 10501(b) (**emphasis added**).

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

This authority over rail transactions is based on sound congressional judgment that the STB, in contrast to local and state municipalities, will make determinations that impact interstate rail transportation in the national public interest. *See e.g.,* 49 U.S.C. § 10901 (STB must authorize rail transactions based on the Public Convenience and Necessity standard).  Consistent with Congress's direction to the STB to minimize regulatory burden (49 U.S.C. § 10101(2)) and to reduce barriers to entry into and exit from the industry (49 U.S.C. § 10101(7)), the STB has established certain classes of rail transactions that are exempt from extensive regulatory scrutiny.  Under the STB's class exemption procedures, 49 C.F.R. § 1150.41 *et seq.*, certain routine transactions are permitted to go forward on a 30-day notice proceeding.  Both transactions at issue here have been authorized under the STB's class exemption procedures.  *See WRL, LLC—Acquisition Exemption— City of Tacoma, Dep't of Pub. Works*, Docket No. FD 36074 (STB served Oct. 14, 2016) ("*WRL I*")[13]; *WRL, LLC d/b/a Rainier Rail—Acquisition and Operation Exemption—City of Tacoma, Dep't of Pub. Works d/b/a Tacoma Rail*, Docket No. FD 36341 (STB served Sept. 20, 2019) ("*WRL II*")[14].

The plain language of ICCTA expressly preempts Plaintiff's claim under RCW § 35.94.  The "acquisition" of railroads is an activity specifically named in the statute, and the acquisition of railways is directly regulated by the STB.  49 U.S.C. § 10501(b).  Plaintiff's reading of RCW 35.94 gives the local general public a veto over the acquisition of a railroad line.  Courts and STB decisions have

---

[13] Matheson Decl. Ex. B.
[14] Matheson Decl. Ex. C.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 9
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

overwhelmingly held that § 10501(b) categorically preempts any state regulation that could be used to deny a railroad the right to operate as the Board has authorized. *See City of Auburn,* 154 F.3d at 1030–31 (affirming the STB's finding that the ICCTA preempted a local environmental permitting requirement); *Jie Ao & Xin Zhouf Petition for Declaratory Order*, Docket No. FD 35539, slip op. at 4-5, (STB served June 6, 2012). ICCTA prevents states or localities from imposing requirements that, by their nature, could be used to deny a railroad's right to conduct rail operations or proceed with activities the Board has authorized, such as construction, abandonment or acquisition. *Reading, Blue Mountain & Northern Railroad Company – Petition for Declaratory Order*, STB Docket No. FD 35956, *citing City of Auburn*, 154 F3d. at 1029-31. RCW 35.94 would — if it applied to this case — unreasonably interfere with WRL's acquisition of the railway in an STB-authorized transaction. The purpose of ICCTA's express preemption provision is to avoid exactly that result.

Likewise, Plaintiff's requested relief would intrude on the STB's exclusive jurisdiction. The STB has exclusive authority to authorize a rail transaction as well as to stay or unwind a rail transaction. 49 U.S.C. § 10502(d). Moreover, such relief would deny WRL the right to operate on the subject rail line as the Board has authorized. Thus, such relief places an undue burden on interstate rail transportation and is preempted. *See City of Auburn,* 154 F.3d at 1030–31.

Accordingly, Plaintiff's claims challenging whether the transaction was properly authorized are in the wrong forum; they can only be brought at the STB. And the relief that Plaintiff seeks, the enjoining and unwinding of rail transactions, is available solely from the STB. Thus, assuming arguendo that the state law

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 10
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

1    requirement for a public vote applied to the transactions at issue (and it does not),

2    that law is expressly preempted by ICCTA.[15]  This Court should find that Plaintiff's

3    state law claims are federally preempted and thus are unlikely to succeed on the

4    merits.

**B. The Repealed State Statute Applies Only to "Street Railways"; the Mountain Division is not a Street Railway.**

5
6
7    Plaintiff's argument that state law requires a public vote on the two rail line

8    transactions is also wrong.  That argument is premised on the fact that the

9    predecessor to RCW 35.94.020, Rem. Rev. Stat. § 9512 (1946), specifically

10   included "railway[s]" within its ambit.  This provision was repealed by the Washington

11   State legislature in 1965.  RCW 35.98.040[16].  RCW 35.94 no longer makes any

12   reference to street railways, or to railways of any other kind.  It does not, as

13   presently written, apply to any type of railroad as that term is defined by the current

14   Washington statute.

15   Moreover, the "railways" referenced in that repealed predecessor statute,

16   § 9512, were a specific type of railway: "street railways."  According to Plaintiff, the

17
18

---

19   [15] Plaintiff's argument that ICCTA contains a federal preemption carve out for votes required by state law to approve a line sale transaction is incorrect.  While Plaintiff is correct that 49 USC
20   § 11321 requires for a Board authorized transaction that a carrier or corporation first obtain "a majority, or the number required under applicable state law, of the votes of the holders of capital
21   stock of that corporation entitled to vote," this provision is inapplicable here.  By its terms,
     § 11321 applies to transactions approved or exempted under Chapter 113--Finance, Subchapter
22   II—Combinations which cover pooling and division agreements (§ 11322) and consolidations, mergers and acquisition of control of rail carriers (§ 11323). The transactions at issue involve line
23   sales subject to the provisions of Chapter 109–Licensing, which contain no such stockholder voting requirement.  Moreover, the requirement in § 11321 applies specifically to corporate
     stockholders.  It creates no special exception for a state law requiring the public to vote on a rail transaction.
24   [16] The Code Reviser did not codify the list of acts or parts of acts repealed.  The Repeal of Chapter 137, Laws of 1917 is found at Section 292 of the uncodified portion of RCW 35.98.040.
25   See, Laws of 1965, Ch. 7.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 11
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

statutory definition of "street railways" — which present day Washington law refers

to as "street railroads" — includes "every railroad by whatsoever power operated, or

any extension or extensions, branch or branches thereof, for public use in the

conveyance of persons or property for hire."  However, the present statutory

definition does not end there as Plaintiff implies.  Rather, it continues as follows:

> **being mainly upon, along, above, or below any street, avenue, road, highway, bridge, or public place within any one city or town**, and includes all equipment, switches, spurs, tracks, bridges, right of trackage, subways, tunnels, stations, terminals, and terminal facilities of every kind used, operated, controlled, or owned by or in connection with any such street railroad, within this state.

RCW  81.04.010(7) (**Emphasis added**.)  Notably, the same statute separately

defines "railroad" as "every railroad, other than street railroad."  RCW 81.04.010(9).

In other words, the former § 9512 applied the vote requirement only to "street

railroads."  By restricting its ambit to "street railroads," it specifically excluded other

"railroads."

The former state statute's inclusion of street railroads, and exclusion of all

other railroads, squares with the federal regulatory framework.  Under ICCTA, street

railroads are expressly excluded from the STB's jurisdiction.  49 U.S.C. § 10102

provides:

> In this part –
>
> . . .
>
> (5)"rail carrier" means a person providing common carrier railroad transportation for compensation, **but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation;**

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

(**Emphasis added**.)  The use of "street railway" in former § 9512 underscores the conclusion that the current statute does not, on its face or by operation of Plaintiff's theory of revision, apply to other types of railroads, including the Mountain Division.

Accordingly, the Mountain Division is not a "street railway" subject to the provisions of the prior version of RCW 35.94, even if those provisions remained in force.  The Mountain Division does not operate mainly on the street and it is certainly not located "within one town."  Mountain Division is, instead, a federally regulated rail carrier subject to the exclusive jurisdiction of the STB.

Plaintiff also argues that "Railroads are defined as "public utilities" under RCW 82.16.010 (9).  However, that Chapter provides for excise taxes, and the cited subsection reads:

> Railroad car business means the business of operating stock cars, furniture cars, refrigerator cars, fruit cars, poultry cars, tank cars, sleeping cars, parlor cars, buffet cars, tourist cars, or any other kinds of cars used for transportation of property or persons upon the line of any railroad operated in this state when such railroad is not owned or leased by the person engaging in such business.

Plaintiff fails to explain how the definition of "Railroad Car Business" establishes that the Mountain Division railroad is a utility.  Plaintiff also argues that "[r]ailways are regulated as public utilities under Chapter 480-62 WAC".[17]   However, this chapter of the Washington Administrative Code pertains to the rules of the Washington Utilities and Transportation Commission that apply to "railroad Companies."  WAC 480-62-130.  Further, the statute establishing the general power and duties of the Washington Utilities and Transportation Commission distinguishes

---

[17] Plaintiff's Motion, Dkt. 8, p. 6 lines 11 and 12.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 13
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

between the regulation of transportation of persons and property and the regulation

of businesses supplying utility services, providing in pertinent part as follows:

> The utilities and transportation commission shall:

> (1) Exercise all the powers and perform all the duties prescribed by this title and by Title 81 RCW, or by any other law.

> (2) Regulate in the public interest, as provided by the public service laws, all persons engaging in the transportation of persons or property within this state for compensation.

> (3) Regulate in the public interest, as provided by the public service laws, the rates, services, facilities, and practices of all persons engaging within this state in the business of supplying any utility service or commodity to the public for compensation.

> . . .

RCW 80.01.040.

In sum, the railroads in question are neither "street railroads" nor "utilities,"

and therefore RCW 35.94 cannot apply to the transactions Plaintiff seeks to block.

**C. Though RCW 35.94 Excludes Railroads, the City Voluntarily Complied with Public Participation Provisions in the Sale of the Railroad.**

Plaintiff's motion is based solely upon his assertion that the City must follow

the procedural requirements of RCW 35.04.020, which require a public vote to

dispose of public utility works, plants and systems. If this statute does not control,

then no public vote is required and Plaintiff cannot meet his burden.[18]

RCW 35.04.020 provides in pertinent part as follows:

> The legislative authority of the city, if it deems it advisable to lease or sell the works, plant, or system, or any part thereof, shall adopt a resolution stating whether it desires to lease or sell. . . . If the resolution is adopted it shall be

---

[18] The City does not concede that the Mountain Division is a utility or that the public interest determination requirements under RCW 35.94.020 via a public vote are not preempted under federal law.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 14
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

necessary, in order that the bid be accepted, to enact an ordinance accepting it and directing the execution of a lease or conveyance by the mayor and city clerk or other proper official. The ordinance shall not take effect until it has been submitted to the voters of the city for their approval or rejection at the next general election or at a special election called for that purpose, and a majority of the voters voting thereon have approved it. . . .

While this statute establishes a process requiring a public vote for disposal of public utility works, plants and systems, it is not exclusive. The legislature has provided another method for disposal of property that does not require a public vote. This statute, RCW 35.94.040, provides in pertinent part as follows:

(1) Whenever a city shall determine, by resolution of its legislative authority, that any lands, property, or equipment originally acquired for public utility purposes **is surplus to the city's needs** and is not required for providing continued public utility service, then such legislative authority by resolution and after a public hearing may cause such lands, property, or equipment to be leased, sold, or conveyed. Such resolution shall state the fair market value or the rent or consideration to be paid and such other terms and conditions for such disposition as the legislative authority deems to be in the best public interest.

(2) The provisions of RCW 35.94.020 and 35.94.030 shall not apply to dispositions authorized by this section.

**(emphasis added).** This statute, by its terms, exempts any transaction meeting the requirements of subsection 1 from the requirements of RCW 35.94.020, including the requirement for a public vote.

RCW 35.94.040 differs from RCW 35.94.020 in two key respects: (1) it applies only when surplus land, property or equipment acquired for utility purposes is being disposed of, and (2) the public interest determination rests solely with the legislative authority, *i.e.*, the City Council. Accordingly, it provides an alternative mechanism for disposal of utility property when such property has become surplus to the City. Because Plaintiff has the burden to establish a likelihood of prevailing in

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER- 15
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

his claim, he can only do so by establishing that the disposition of the 4.4 mile segment must comply with RCW 35.94.020.  In other words, Plaintiff must establish that this 4.4 mile segment is not surplus to the needs of the City and thus can only be disposed of pursuant to RCW 35.94.020.   He cannot meet his burden.

Plaintiff has presented no evidence regarding the City's need to retain this 4.4 mile segment of the Mountain Division rail line or why it is not surplus to the needs of the City.  In contrast, the City has, through the declaration of Assistant Rail Superintendent Alan Matheson, provided evidence that the Mountain Division was losing money and it was necessary to sell segments of the rail line to repay outstanding debt.[19]  Further, these divestments resulted in the City avoiding the expenditure of several million dollars in additional costs to maintain these segments and were chosen to ensure that the City would preserve the assembled Mountain Division railroad right of way.[20]

More importantly, the disposition of the 4.4 mile segment followed a process that complies with the procedural requirements of RCW 35.94.040.  This statute contains three key requirements: (1) that the City Council[21] determine by resolution that the property is surplus to the needs of the City and no longer needed for providing continued utility services, (2) that it approve the surplus resolution after a

---

[19]  *See* Matheson Decl., pp 3 & 4, ¶ 16.
[20]  *Id.*, p. 4 ¶¶ 22 & 23.
[21]  The City Council is the legislative authority of the City.  Tacoma City Charter provides in pertinent part as follows "Section 2.1 . . .   The Council shall constitute the legislative and governing body of the City and shall have authority, except as otherwise provided in this charter, to exercise all powers of the City."

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER- 16
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

public hearing, and (3) that the resolution include the consideration to be paid. These requirements were met.

The City Council approved the sale of the 4.4 mile segment pursuant to City Council Resolution No. 40394.[22]  The resolution provides in pertinent part as follows:

BE IT RESOLVED BY THE COUNCIL OF THE CITY OF TACOMA:

Section 1. That continued ownership of approximately 4.4 miles of Tacoma Rail Mountain Division property located in unincorporated Pierce and Thurston Counties, legally described in Exhibit "A," is not essential to the needs of the City and is hereby declared surplus pursuant to RCW 35.22.020 and Article I, Section 1.2, and Article IX of the Tacoma City Charter.

Section 2. That the negotiated sale of approximately 4.4 miles of property located in unincorporated Pierce and Thurston Counties, together with related railroad infrastructure and personal property associated with said property, to WRL LLC for the amount of $100,000 is hereby approved, all as more specifically set forth in the Real Estate Purchase and Sale Agreement on file in the office of the City Clerk.[23]

The City Council in section 1 above declared this property to be surplus and not essential to the needs of the City, and in section 2 identified the compensation to be paid.  Thus the first and third requirements of RCW 35.94.040 have been met. The public hearing requirement was also met.

Resolution No. 40394 was on the City Council's published agenda as item No. 10.[24]  Following item No. 4 on the City Council agenda, the City Council opened the meeting to public comments on any matters on the City Council Agenda.[25]  The

---

[22] *See* Sloan Decl, Exhibit A attached thereto.
[23] *Id.*
[24] *See*, Declaration of Susan D. Haigh, Exhibit A hereto (City Council Agenda).
[25] *See, id.,* Exhibit A (City Council Agenda) The Public Comment period is the time set aside for public comment on Resolutions and first and final reading of Ordinances.  Speakers are asked to identify the specific legislation they wish to address and comments will be limited to no more than three minutes per person.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER- 17
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

public comment sign-up sheet indicates that Mitchell Shook, the Plaintiff in this action, signed up to speak to the "railroad sale res. 40394". [26] Likewise, the minutes from the August 6, 2019, City Council Meeting reflect that Mr. Shook provided public comment to the Council regarding City Council Resolution 40394.[27] Thus, not only was there an opportunity for public testimony regarding the sale, the Plaintiff participated in this process. Plaintiff cannot overcome the uncontroverted fact that the process used by the City to dispose of the 4.4 mile rail segment also met the statutory requirements under RCW 35.94.040 and was exempt from the public vote requirements of RCW 35.94.020.

Thus, even if the state law was not preempted by federal law, and even if the Mountain Division were somehow found to be a "street railway" covered by repealed law or a "utility," the fact remains that the City, as a matter of best practices and good government, complied in all respects with the applicable provision of the statute presently in force. Accordingly, this Court should find that Plaintiff's claim is unlikely to succeed on the merits.

## II. PLAINTIFF FACES NO THREAT OF IRREPARABLE HARM BECAUSE HIS POTENTIAL REMEDY WILL BE UNAFFECTED WHEN THE ACQUISITION EXEMPTION BECOMES EFFECTIVE ON OCTOBER 5, 2019.

Plaintiff will suffer no harm, let alone irreparable harm, if the Court denies this motion. Courts define irreparable harm as harm for which there is no adequate legal remedy, such as an award of damages. *Arizona Dream Act Coal v. Brewer*, 757

---

[26] *See, id.,* Exhibit C.
[27] *See, id.,* Exhibit B (Minutes of August 6, 2019 City Council Meeting) and Exhibit C (Public Comment Sign-in Sheet).

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER- 18
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

F.3d 1053, 1068 (9th Cir. 2014).  Here, the alleged harm to the Plaintiff —deprivation of the right to vote on the divestment — has already occurred.  Plaintiff has alleged no further harm that will occur absent a Temporary Restraining Order.  In fact, Plaintiff has alleged no other harm whatsoever.  Plaintiff also has an adequate legal remedy, but not in this Court.  Plaintiff's sole avenue for relief lies with the STB. Plaintiff's suit seeks to undo two rail line transactions so that they can be put to a public vote.  In order to achieve this, he must obtain an STB order that revokes regulatory authority for each transaction and orders that the transactions be unwound.

There is no urgency warranting extraordinary relief because Plaintiff's remedy will be the same after October 5, when the acquisition exemption becomes effective, as it is today:  Namely, to obtain the relief to which he claims he is entitled, he must apply to the STB.  Significantly, he may do so at any time. *See WRL II,* slip op. at 2 ("Petitions to revoke the exemption under 49 U.S.C. § 10502(d) may be filed at any time.")[28]; *see also* 49 U.S.C. § 1322(c); 49 C.F.R. § 1115.4.  In short, Plaintiff has now, and will still have, once the exemption becomes effective, the same remedy available to him, which is to file a petition to revoke the exemption.[29]  Plaintiff's ability to petition the STB to revoke the exemption is not only an adequate remedy, as discussed above, it is his exclusive remedy.

---

[28] *See* Matheson Decl. Ex. C.
[29] It should be noted, that throughout this action, Plaintiff has been – or should have been – aware that he could also have filed a petition to stay the exemption until September 27, 2019. *See WRL, LLC,* slip op. at 2.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER- 19
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

Nor would the imposition of a TRO ameliorate Plaintiff's alleged harms in light of the status of the rail line transactions.  The first divestiture was completed and title conveyed in 2016.  Nothing remains to be done. The City has likewise already performed all obligations under the purchase agreement for the second divestiture, the transaction that Plaintiff seeks to enjoin. The City Council approved the transaction on August 6, 2019, and deeds for the property have been conveyed to the buyer.  Further, the buyer, who is not a party to this action, has also already performed its obligations under the purchase agreement including paying the purchase price.  The last step to fully consummate the transaction is for the STB's exemption authority to become effective.  That will occur on October 5, 2019, *see WRL II,* slip op. at 2, and requires no further action from either the City or the buyer. Given the status of the transaction, there is no action of the City for this Court to enjoin.

Notably, Plaintiff's claimed urgency is of his own making.  Plaintiff failed to seek preliminary injunctive relief while the parties were taking steps towards consummating the transaction.  Likewise, Plaintiff has failed to seek any relief at the STB while the Notice of Exemption is pending.  Plaintiff could have asked the STB to stay the effectiveness of the exemption pending resolution of this litigation or could have petitioned the STB to revoke the exemption.  Plaintiff did neither, and the time for seeking a stay at the STB has now expired.  Plaintiff's inaction belies his claims of irreparable harm and immediacy of harm.

## III.   A TEMPORARY RESTRAINING ORDER WOULD HARM THE CITY AND IS NOT IN THE PUBLIC INTEREST.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 20
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

The final two factors also weigh against Plaintiff's Motion for a Temporary Restraining Order.  A plaintiff seeking a Temporary Restraining Order "must establish…that the balance of equities tip in his favor."  *Winter*, 555 U.S. at 20.  In assessing the balance of equities, the Court must "balance the interests of all parties and weigh the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir.1980).  Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." 555 U.S. at 24. (quotation marks and citation omitted).

As discussed above, Plaintiff will suffer no harm — irreparable or otherwise — if this Court denies the Motion for Temporary Restraining Order.  Plaintiff retains the right to challenge this transaction in the proper forum with no limit on timing.  A Restraining Order would, on the other hand, open the City and the public to substantial harm.  A Restraining Order that interferes with the transaction could put the City in breach of its obligations under the Purchase Agreement and could unravel the entire transaction.  This would harm the City, the buyer, and potential rail customers by denying or delaying the realization of the benefits of their bargain.  These benefits include the City shedding millions of dollars in maintenance and rehabilitation liabilities.  Absent these sales, the City would become responsible for approximately $3 million in repairs to the Nisqually Bridge.[30]  The sale will also allow restoration of rail service on the subject rail line, which would benefit local industry and the local and national economy.[31] Thus, as the City alone faces any potential

---

[30] *See* Declaration of Dale King, Exhibit B hereto, p. 2, ¶ 10.
[31] *See* Matheson Decl., p. 5, ¶¶ 21-22.

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 21
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

harm from the requested relief, Plaintiff cannot show the balance of equities tips in his favor.  Further, a Restraining Order would likely generate consequences that harm the public interest.  Both factors weigh heavily against granting injunctive relief.

## IV.  PLAINTIFF MUST POST A BOND AS A CONDITION PRECEDENT TO A GRANT OF INJUNCTIVE RELIEF.

Federal Rule of Civil Procedure 65(c) reads as follows:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Plaintiff is seeking to enjoin the completion of the $100,000 sale and transfer of 4.4 miles of railroad right-of-way. The requested Temporary Restraining Order endangers the sale of the right-of-way and could cost the City of Tacoma millions of dollars for railroad maintenance and repairs, as well as exposing the City to potential breach of contract damages.  If the Court grants Plaintiff's motion (and it should not), Plaintiff should be required to post a bond sufficient to protect the City against the costs and damages that the City may sustain.

## CONCLUSION

Based upon the foregoing facts and legal authorities, Defendant City of Tacoma respectfully Opposes Plaintiff's Motion for a Temporary Restraining Order.

Respectfully submitted this 30th day of September, 2019.

WILLIAM C. FOSBRE, City Attorney

By _____

M. Joseph Sloan, WSBA #13206
Deputy City Attorney

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 22
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September 2019, I electronically filed the foregoing Defendant's Opposition to Motion for Temporary Restraining Order with attachments with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mitchell Shook
3624 6th Ave, Suite C
Tacoma, WA 98406
mitch@advancedstream.com
*Plaintiff*

Dated this 30th day of September, 2019, in Tacoma, Washington.

*Diane Kubicek*
Diane Kubicek
Paralegal

DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER- 23
No. 3:19-cv-05794-BHS

Office of the City Attorney
Department of Public Utilities
3628 South 35th Street
P. O. Box 11007
Tacoma, Washington 98411
Phone 253.502.8348
Facsimile 253.502.8672